**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

JULIAN SILVA,

                                        Petitioner,                          **15-CV-09032 (GHW)(SN)**

                       -against-                                             <u>**REPORT AND**</u>
                                                                             <u>**RECOMMENDATION**</u>
MICHAEL CAPRA,

                                        Respondent.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GREGORY H. WOODS:**

         Julian Silva, pro se, petitions under 28 U.S.C. § 2254 for a writ of habeas corpus vacating

his October 13, 2010 convictions of criminal sale of a controlled substance in the first degree,

criminal possession of a controlled substance in the third degree, and criminally using drug

paraphernalia in the second degree. Silva claims: (i) he was deprived of his due process right

when the state trial court failed to notify him or his attorney of a jury note; and (ii) he was

deprived of a fair trial due to numerous improper and prejudicial comments made by the

prosecution throughout the trial.

         Silva's petition should be denied. His due process claim on the jury note is unexhausted

because he failed to present the federal nature of his claim in state court. His due process claim

related to the prosecution's conduct at times other than summation is unexhausted, but should be

deemed exhausted and procedurally defaulted. Finally, Silva's claim of prosecutorial misconduct

related to statements made by the prosecutor during summation should be denied as meritless.

## BACKGROUND

### I.      Police Investigation and Silva's Arrest

In the summer of 2007, a team of New York Police Department (NYPD) detectives initiated a long-term investigation into an organization selling crack cocaine in and around the Dyckman Housing Development in Manhattan's Inwood neighborhood. The investigation focused on Lilian Rivera, the suspected leader of the organization, and her associates. In August 2007, the police observed Silva enter Rivera's residence with her and shortly thereafter leave carrying a Burberry bag with a yellow envelope.

In December 2007, the police placed a wiretap on Rivera's phone. Through a series of calls between December 2007 and March 2008, Silva and Rivera negotiated the terms under which Silva would sell Rivera a kilogram of cocaine for $26,500. In February 2008, the police also placed a wiretap on Silva's phone.

On March 7, 2008, Silva engaged in a series of calls with Adrian Artola, in which Silva agreed to purchase four kilograms of cocaine from Artola. Because he was in Florida at the time, Silva told Artola that he would send his cousin, Jose Mena, to tender payment and retrieve the drugs. On the same day, Mena met with Artola. The two men drove in separate vehicles to a location near the Bruckner Expressway in the Bronx, where an unidentified man passed a box-shaped object through the window of Mena's vehicle.

Around 5:00 p.m. on March 7, 2008, Rivera called Silva and arranged a meeting with Mena at a nearby driving school. Cell cite information confirmed that Rivera and her driver, Benny Garay, drove to the agreed upon meeting location near 204th Street and Broadway. Garay then drove Rivera back to her apartment building, where he dropped her off. Police arrested

Garay a few minutes later. They recovered a piece of cocaine wrapped in a dollar bill from his pocket.

After returning to her residence in the Bronx, Rivera ran into her apartment building carrying a white and blue bag with a rectangular outline. Police arrested Rivera later that evening when she was walking her dog. During a subsequent search of her apartment, police recovered a white and blue bag containing a kilogram of cocaine in brick form, with a small piece missing from a corner. They also recovered a key with cocaine residue on it, a pair of scissors and $4,800 in cash.

Silva was arrested in Florida on June 25, 2008. On the same day, police executed a search warrant of Silva's residence in the Bronx. During the search, police found three digital scales, a notebook containing drug records, and other drug paraphernalia including rubber bands, plastic wrap and a bill counter. They also found an unloaded silver handgun in Silva's bedroom.

By an indictment filed on July 10, 2008, Silva was charged with Criminal Sale of a Controlled Substance in the First Degree, N.Y. Penal Law § 220.43(1), Criminal Possession of a Controlled Substance in the Third Degree, N.Y. Penal Law § 220.16(1), Criminal Possession of a Weapon in the Third Degree,[1] N.Y. Penal Law § 265.02(1), and Criminally Using Drug Paraphernalia in the Second Degree, New York Penal Law § 220.50(3).

## II.    Trial Court Proceedings

Before trial, defense counsel filed a motion *in limine* seeking to preclude: all evidence seized from Silva's house after his arrest, apart from the weapon and the scales which were charged in the indictment; all evidence relating to uncharged prior sales and negotiations between Silva and Rivera; all evidence of Rivera's other, unrelated drug sales; and all evidence

---

[1] Before trial, the weapons charge was reduced to attempted criminal possession of a weapon in the third degree.

of Silva's other, unrelated drug sales. In a pre-trial conferences, the trial judge ruled on the motion. He admitted limited evidence of Rivera's prior drug transactions as "background" to support the prosecution's theory that Rivera and Silva were discussing the sale of cocaine, and not some other substance, in their recorded telephone conversations. (Sept. 27, 2010 T. 9.) The court also ruled that prior conversations between Silva and Rivera about the sale of cocaine were admissible because they were relevant to the parties' intent to engage in the charged sale. The court ruled that evidence of Silva's prior drug sales with third parties would not be admissible unless the defendant's intent became an issue, or if the defense "open[ed] the door" to this evidence on cross-examination. (Sept. 28, 2010 T.3.) The court also ruled that the ledgers and bill counter collected from Silva's house were admissible as relevant to Counts 2 and 4, to show that the scales were used for narcotics trade. Finally, the court precluded the admission of the ammunition recovered at Silva's apartment because the prosecution was moving to reduce the third charge to attempted possession of a weapon.

During the prosecution's opening statement, the defense made repeated objections to the prosecutor's characterization of Silva's "business" and "job" of selling drugs. At the end of the prosecution's opening remarks, defense counsel indicated that he intended to make an application to the court following his own opening remarks. During a sidebar after the prosecution began examining its first witness, defense counsel moved for a mistrial. He argued that the prosecutor's statements during opening remarks accused Silva of being a drug dealer, rather than of conduct related to the specific crime charged. The court denied the motion.

Detective Salvador, the lead investigator on the case, testified about drug sales between Rivera and undercover police officers. He also testified about his observations of interactions between Silva and Rivera on dates before March 7, 2008. Detective Salvador discussed evidence

indicating that Silva had sold a kilogram of cocaine to Rivera on December 18, 2007. When asked to describe the nature of phone calls between Silva and Rivera from late December 2007 to late February 2008, Detective Salvador said: "the phone calls basically were Lillian Rivera calling Mr. Julian Silva and inquiring whether he had cocaine on hand or not, to which the defendant would reply that he was still waiting." (T. 550.) He testified that there were no calls between Silva and Rivera in which the two did not discuss drugs. Detective Salvador also discussed the contents of a series of calls between Silva and Artola and Silva and Rivera on or around March 7, 2008.

After defense counsel implied during the cross-examination of other detectives that the police were incompetent for failing to prevent the March 7, 2008 transaction, Detective Salvador was permitted to provide background information on the investigation. Over defense counsel's repeated objections, Detective Salvador testified about Rivera's prior violent behavior, including participation in numerous shootings and stabbings. The court explained to the jury that this information was "introduced by way of background to explain the reasons for the officers' or the police department's investigation into this particular area," and added that the evidence "was not offered or allowed in and must not be considered . . . for the purpose of proving that the defendant had a propensity or predisposition to commit the crimes for which he is actually charged." (T. 547.)

During summation, the defense argued that the prosecution had failed to prove beyond a reasonable doubt that Silva had participated in the sale of a kilogram of cocaine on March 7, 2008. Defense counsel urged the jury not to be "fooled by the smoke screens set up for the purpose of trying to convince you that Julian Silva is a bad guy." (T. 888.) He questioned the credibility of the police officers who had testified at trial, highlighting the lack of video evidence

or eye witness testimony at the moment when the drug transaction occurred. Defense counsel asked the jury whether it accorded with their common sense "that police officers knowing that four kilograms of cocaine had been given from one person to another did absolutely nothing to get the four kilograms?" (T. 892.) In reference to a prior drug sale on December 18, 2007, when the police testified that they were unable to assemble a team quickly enough to intercept the deal, defense counsel asked: "How is it possible that every time they tell you they know a drug deal took place, they don't get anything? They don't watch anyone in the act. They don't stop anybody with anything." (T. 903.) In conclusion, defense counsel stated: "I suggest to you that despite the hours and hours of tapes and the thousands [of] man hours they devoted to this case, that in the final analysis it comes down to whether or not you believe the nonsensical testimony they gave you about what happened or what didn't." (T. 921.)

During the People's closing remarks, the prosecution again described Silva as a "drug dealer," (T. 952.), with a "business" and stated that there was "no disputing" that the calls between Silva and Rivera concerned the sale of cocaine. (T. 928.) The prosecutor argued that although the defense contended that a third-party had sold Rivera the kilogram of cocaine, the defense had failed to provide any evidence concerning this "mystery drug dealer." (T. 932.) The prosecutor also questioned why the defense had not cross-examined the police officers about the contents of the wiretap calls.

The prosecutor argued that "every single argument that has been advanced to you by [the defense] is a distraction, a smoke screen in this case." (T. 935–36.) She then discussed how various arguments presented by the defense throughout the trial actually supported the prosecution's case. Regarding the veracity of the testimony offered by Detective Salvador and the other police officers, the prosecutor argued that if the detectives had been lying, they would

have said that they actually had seen the March 7, 2008 drug sale take place, "because we know that is what happened. We know that from the phone calls." (T. 947–48.)

In discussing evidence in support of the weapon possession and drug paraphernalia charges, the prosecutor asked "why would you have a gun cleaning kit to clean a gun specifically after its been fired if the gun doesn't work?" (T. 962.) She also stated that Silva had the gun in order to "protect his business . . . to protect his guns and cash." (T. 967.) Regarding the seized bill counter, the prosecutor argued that "a person who has a money counter is somebody . . . who obviously is dealing with a lot of money. Somebody who is receiving a lot of money." (T. 963.) The prosecutor also reminded the jury of a phone call with sounds of a child in the background to make the point that Silva engaged in drug sales while his children were in the house. Finally, she pointed to testimony from Detective Salvador about a drug transaction on March 9, 2007, when Silva allegedly had sent his elderly aunt, Hermania, as a courier to deliver a package of drugs. The court overruled the defense attorney's objections to these statements.

Following the summations and the jury charge, defense counsel moved for a mistrial on the grounds that the prosecutor's summation (i) improperly spoke of evidence that the defense did not have the burden to disprove; (ii) characterized Silva as a "drug dealer" and made repeated references to his "business"; and (iii) contained inflammatory comments about Silva's parenting skills. The court denied the motion.

On October 13, 2010, at approximately 10:30 a.m. during the jury's second day of deliberations, the jury sent a note to the court requesting "the wire transcript mentioning the gun" and the court's instructions on the weapon possession count. (SR 150.) Approximately one hour later at 11:40 a.m., the jury sent a note that it had reached a verdict. Although the first note was marked as a court exhibit, the record does not reflect that the court ever saw or responded to the

note. When the court reconvened around 12:00 p.m., it acknowledged receipt only of the second note.

The jury found Silva guilty on all counts. On December 15, 2010, the court sentenced Silva to (i) 24 years' imprisonment, followed by five years of post-release supervision, on the first-degree Criminal Sale of a Controlled Substance conviction; (ii) 12 years' imprisonment, followed by three years of post-release supervision, on the third-degree Criminal Possession of a Controlled Substance conviction; (iii) two to four years' imprisonment on the attempted third-degree Criminal Possession of a Weapon conviction; and (iv) one year imprisonment on the second-degree Criminal Use of Drug Paraphernalia conviction, with all sentences to run concurrently.

### III.    Post-Conviction Proceedings

#### A.    State Proceedings

Silva's counseled appeal brief raised three issues: (i) the trial court erred in consistently admitting evidence of uncharged criminal activity, tending only to show criminal propensity; (ii) the prosecutor's remarks on summation were improper and prejudicial; and (iii) the trial court violated C.P.L. § 310.30 when it failed to inform defense counsel of the first jury note.

On October 11, 2012, the Appellate Division affirmed the judgment, holding that the trial court's rulings on uncharged crimes evidence "were proper exercises of discretion." People v. Silva, 99 A.D.3d 522, 523 (1st Dep't 2012.) The court rejected Silva's summation argument as unpreserved, finding that defense counsel's "unspecified objections, belated mistrial motion, and objections made at earlier stages of the trial were insufficient to preserve his present claims for review as questions of law." Id. In the alternative, the court ruled that the summation presented "no basis for reversal" Id. Regarding the jury note claim, the court held that the record was

insufficient to establish any basis for reversal because the court was unable to determine whether the trial court had responded to or was even aware of the note before the jury reached its verdict.

Silva sought leave to appeal only the summation and the jury note claims. The Court of Appeals granted leave on July 11, 2013. Silva's counseled brief to the Court of Appeals raised two issues: (i) whether the Appellate Division, in rejecting Silva's jury note claim, ignored the legal standard set in People v. O'Rama, 78 N.Y.2d 270 (1991), and its progeny; and (ii) whether the prosecutor's summation had prejudiced him by "taking undue advantage of favorable Molineux[2] rulings, by depicting the petitioner as a 'professional drug dealer' with a propensity to sell drugs, and unduly inflammatory as well." (SR 337.)

On November 24, 2014, the Court of Appeals held that the trial court's failure to inform Silva or defense counsel of the existence of the jury note was reversible error and vacated Silva's attempted weapon possession conviction. The court found that even if the trial court had been unaware of the existence of the jury's first note, Silva's conviction could not stand because "reviewing courts cannot assume that the proper procedure was utilized when the record is devoid of information as to how the jury notes were handled." People v. Silva, 24 N.Y.3d 294, 300 (2014). The court held that "failure to apprise counsel about the specific contents of a substantive note from a deliberating jury violates the fundamental tenets of CPL 310.30 and qualifies as a mode of proceedings error." Id. at 299. In a footnote, the court held that Silva's drug-related convictions were upheld because the information requested by the jury related only

---

[2] People v. Molineux, 168 N.Y. 264 (1901), established the New York evidentiary rules for admitting evidence of prior bad acts. Similar to Fed. R. Evid. 404(b)(2), evidence of prior bad acts is admissible to "prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; [or] (5) the identity of the person charged with the commission of the crime on trial." Id. at 293.

to the weapon possession charge and because "no reversible error occurred during the People's summation." (Id. at 301, n.2.)

On December 15, 2014, Silva filed a motion for reargument, claiming that the finding of a mode of proceedings error in connection with the jury note required complete vacatur of Silva's conviction. The Court of Appeals denied Silva's motion for reargument on February 24, 2015. People v. Silva, 24 N.Y.3d 1216 (2015).

### B.      The § 2254 Petition

On November 5, 2015, Silva, pro se, filed his § 2254 petition in the U.S. District Court for the Southern District of New York. Silva raises two grounds for relief: (i) the trial court's handling of the first jury note deprived Silva of his Sixth Amendment constitutional rights; and (ii) the "cumulative impact of the prosecutor's persistent misconduct" throughout the trial and during summation deprived Silva of a fair trial. (Pet. Br. 19.)

### DISCUSSION

## I.      Timeliness

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final to seek federal habeas corpus relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). The AEDPA statute of limitations is tolled during the time period in which "a properly filed application for State post-conviction" review is pending. See 28 U.S.C. § 2244(d)(2). A petitioner's judgment becomes final 90 days from the date the New York State Court of Appeals issues its final judgment—i.e., after the "period to petition for a writ of certiorari to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002).

It is uncontested that Silva's habeas petition is timely filed. AEDPA's statute of limitations was tolled through the entirety of Silva's state appeal process, including his application to the Court of Appeals for reargument.[3] Because the New York Court of Appeals denied Silva's motion seeking reargument on February 24, 2015, and Silva did not seek a writ of *certiorari* to the U.S. Supreme Court, his conviction became final 90 days later, or on May 25, 2015. Silva had one year to file his habeas petition, or until May 25, 2016. Accordingly, Silva's petition, filed November 5, 2015, is timely.

## II.   Jury Note Claim

### A.   Exhaustion

Before a federal court can review a petition for a writ of habeas corpus, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (to exhaust a claim a petitioner must "invoke[] one complete round of the State's established appellate review process" before bringing the same claim in federal court). A claim is deemed exhausted if the petitioner: (i) "fairly presented" to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (ii) presented his claim to the highest state court that could hear it. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844–48.

To fairly present his claims, a petitioner may not rely solely on general principles of fairness, but instead must refer to specific constitutional provisions or concepts. See Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992) (minimal reference to the Constitution satisfies the

---

[3] Pursuant to Court of Appeals Rule 500.24, a movant must file the notice of motion for reargument "not later than 30 days after the appeal, certified question or motion sought to be reargued has been decided." N.Y. Ct. Rules § 500.24(b). Silva timely filed his motion for reargument within 30 days after the Court of Appeals issued its decision.

exhaustion requirement); see also de la Cruz v. Kelly, 648 F. Supp. 884, 888 (S.D.N.Y. 1986)

(petitioner sufficiently alerted the state court of the constitutional aspect of his claims when he

argued that the challenged ruling denied him a fair trial and cited the Fourteenth Amendment).

The legal doctrine asserted in the state courts does not need to be identical to that raised in the

habeas petition, but "the nature or presentation of the claim must have been likely to alert the

court to the claim's federal nature." Daye v. Att'y Gen. of New York, 696 F.2d 186, 192 (2d Cir.

1982).

The Court of Appeals applies the "fair presentation" standard liberally, allowing that a

state court may be deemed to be on notice of the constitutional nature of a claim even if the

petitioner did not specifically quote the U.S. Constitution. Other ways that a petitioner may be

found to have provided sufficient notice include "(a) reliance on pertinent federal cases

employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in

like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific

right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the

mainstream of constitutional litigation." Ramirez v. Att'y Gen. of New York, 280 F.3d 87, 95

(2d Cir. 2001) (citing Daye, 696 F.2d at 194). This position protects petitioners who rely on

constitutional principles without citing "book and verse on the federal constitution," while

ensuring that state courts have the opportunity to "pass upon and correct" alleged violations of

federal rights. Picard v. Connor, 404 U.S. 270, 275, 278 (1971) (internal quotations and citations

omitted).

Silva's Sixth Amendment jury note claim is unexhausted because the constitutional

nature of the claim was not fairly presented on appeal to the state courts. "A claim premised on a

violation of New York Criminal Procedure Law Section 310.30 does not allege a violation of a

federally protected right." Cornado v. Bellnier, 10 Civ. 5265 (RA)(HBP), 2012 WL 6644637, at

*5 (S.D.N.Y. Sept. 20, 2012), report and recommendation adopted by 2012 WL 6681692

(S.D.N.Y. Dec. 21, 2012); see also Johnson v. Graham, 09 Civ. 5838 (SAS)(KNF), 2010 WL

3855286, at *5 (S.D.N.Y. Oct. 1, 2010) ("[W]hether or not this failure [to comply with CPL §

310.30] constituted reversible error in the state court, petitioner's 'jury note' claim does not

implicate a federally protected constitutional right"); Quezada v. Nichols, 04 Civ. 2765

(RJH)(RLE), 2008 WL 818566, at *8 (S.D.N.Y. Mar. 26, 2008) ("To the extent that [Petitioner]

claims that the trial court violated the requirements of New York Civil Procedure Law Section

§ 310.30, the Court may not review the merits of this claim on habeas review"). In his counseled

briefs to both the Appellate Division and the Court of Appeals, Silva argued that the trial court's

failure to inform him or his counsel of the first jury note violated CPL § 310.30 and the holding

in People v. O'Rama, 78 N.Y.2d 270 (1991). His briefs neither cited federal case law, nor did

they apply a constitutional analysis to any of Silva's claims. Furthermore, Silva failed to allege a

pattern of facts that were "well within the mainstream of constitutional litigation." Ramirez, 280

F.3d at 95. Instead, he relied on state law to argue that the trial court's procedural error "was

clearly prejudicial; affected the organization of the court; and constituted a mode of proceedings

error, which requires a new trial." (Pet. Br. at 15.)

It is clear from the state courts' decisions that they were not alerted to any constitutional

elements of Silva's claim. In the introduction to its decision, the Court of Appeals framed the

issue as "whether a mode of proceedings error occurs under People v. O'Rama and its progeny

when a court accepts a verdict without affirmatively acknowledging or responding to a jury's

substantive request for information during deliberations." People v. Silva, 24 N.Y.3d at 297

(internal citations omitted). The court proceeded to analyze Silva's claim and issue its opinion

solely based on the requirements delineated in O'Rama and C.P.L. § 310.30. See id. at 298–300. Because Silva failed to present fairly the constitutional nature of his jury note claim on direct appeal to the state courts, his claim is unexhausted and not cognizable on habeas review.

### B.     Procedural Bar

A federal court "need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred" due to a state procedural rule. Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). This is because it "would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity" to require a petitioner to exhaust a claim in state court if the results of further review are "predetermined." Castille v. Peoples, 489 U.S. 346, 350 (1989). In such a case, a petitioner no longer has "remedies available in the courts of the State" within the meaning of § 2254(b). Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982). Accordingly, where a petitioner cannot resort to state court to present a constitutional claim, a federal court will deem the claim exhausted but procedurally defaulted. Grey v. Hoke, 933 F.2d 117, 120–21 (2d Cir. 1991).

A petitioner may, however, overcome a procedural bar by demonstrating either cause for the default and resultant prejudice, or that the failure to consider the federal habeas claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 749–50 (1991); see also DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006) ("Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (brackets omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).

New York procedural rules bar Silva from now raising his federal jury note claim in the state appellate process. He cannot again seek leave to appeal his conviction because he was entitled to only one direct appeal as a right of law. <u>See</u> C.P.L. § 450.10. Second, while New York State law provides for collateral review of a conviction under C.P.L. § 440.10, such review is not available if the claim could have been raised or was actually decided on direct review. <u>See</u> C.P.L. §§ 440.10(2)(c). Here, the Appellate Division and Court of Appeals reviewed Silva's jury note claim on direct review, so this claim cannot be brought again in a § 440.10 motion.

Silva has not submitted any explanation for his failure to raise his federal jury note claim properly on direct appeal. Nor does he argue that failure to consider his habeas claim will result in a fundamental miscarriage of justice. Because Silva has not overcome the procedural default doctrine, the Court should deem Silva's federal jury note claim exhausted but procedurally defaulted.

### C.    Merits

Under the AEDPA, habeas relief may be granted only when the state court's decision:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'" <u>Mannix v. Phillips</u>, 619 F.3d 187, 195 (2d Cir. 2010) (internal alterations omitted) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405–06

(2000)). As long as the state court decision applied the correct legal rule to the facts of a petitioner's case, it is not subject to habeas review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. Williams, 529 U.S. at 406.

A state court's decision involves an "unreasonable application" of clearly established federal law if the court identified the legal rule set forth in governing Supreme Court cases, but unreasonably applied the rule to the facts of the case. Id. at 407–08. A federal court may grant habeas relief only when the state court's decision, as it pertains to any issue of federal law, was "objectively unreasonable" in light of relevant precedent. Thus, in construing and applying federal law, even erroneous state court decisions that are deemed reasonable will survive habeas review. Id. at 409–13. For federal habeas review, factual determinations made by a state court are presumed correct, and a petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Where a petitioner proceeds pro se in the habeas context, the Court must construe his arguments "liberally and interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotations and citation omitted); see Williams v. Breslin, 274 F. Supp. 2d 421, 425 (S.D.N.Y. 2003).

Even if the Court could reach the merits of Silva's jury note claim, Silva cannot establish that federal habeas relief is warranted. As an initial matter, the Court of Appeals vacated his conviction of attempted criminal possession of a weapon in the third degree. Silva's status as a "person in custody" for purposes of the AEDPA, 28 U.S.C. § 2254(a), is therefore not a result of a conviction for the offense that was the subject of this jury note. See Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, the laws, or treaties of the United States").

Additionally, the Court of Appeals' ruling was not contrary to or an unreasonable application of clearly established federal law. There is no Supreme Court precedent establishing a due process violation where a trial judge failed to respond to a question by the jury, but the jury reached a decision before a response reasonably could be provided. See Crockett v. Hulick, 542 F.3d 1183, 1189 (7th Cir. 2008); see also Johnson, 2010 WL 3855286, at *5 n.36. In Shields v. United States, the Supreme Court held that "the rule of orderly conduct of jury trial entitl[ed] the defendant, especially in a criminal case, to be present from the time the jury is impaneled until its discharge after rendering the verdict." Shields v. United States, 273 U.S. 583, 588–89 (1927). The Court declined, however, to base its decision on due process grounds. Id. at 587. Similarly, in Rogers v. United States, the Court held that failure to give defense counsel an opportunity to comment on a jury note violated Fed. R. Crim. P. 43, but stopped short of finding a due process violation. See 422 U.S. 35, 40 (1975). Because the rulings in Shields and Rogers rested solely on federal procedural grounds, they cannot form the basis of a § 2254 petition. See Early v. Packer, 537 U.S. 3, 10 (2002).

Finally, even assuming *arguendo* that Silva has a Sixth Amendment right to have counsel apprised of and given an opportunity to respond to every jury note,[4] any violation of this right is subject to harmless error review.  See United States v. Adeniji, 31 F.3d 58, 65 (2d Cir. 1994) ("noncompliance with [the Second Circuit's] procedure [for responding to jury notes] does not mandate reversal unless prejudice is shown"); United States v. Schor, 418 F.2d 26, 30 (2d Cir. 1969) (holding that any violation of the defendant's right to be informed of the contents of a jury

---

[4] In a decision interpreting the scope of Roger v. United States, the Court of Appeals noted "[t]he Sixth Amendment and Rule 43 of the Federal Rules of Criminal Procedure require that ordinarily a message from the jury be answered in open court and that counsel be given the opportunity to be heard before the trial judge responds to the jury's questions." United States v. Robinson, 560 F.2d 507, 516 (2d Cir. 1977).

note is subject to harmless error review). Because Silva's conviction on the attempted weapon possession charge was reversed, Silva is incapable of showing that he suffered any prejudice as a result of the trial court's error. See Serrano v. Kirkpatrick, 11 Civ. 2825 (ER)(PED), 2013 WL 3226849, at *10 (S.D.N.Y. June 25, 2013).

### III.    Prosecutorial Misconduct Claims

####    A.    Exhaustion

Silva has failed to exhaust any prosecutorial misconduct claims that relate to the prosecutor's conduct at times other than summation. In his motion to the trial court to set aside his verdict under C.P.L. § 330.30(1), Silva argued only that he was "denied his due process right to a fair trial by the prosecutor's arguments during summation." (SR 44.) In his brief to the Appellate Division, Silva raised the following claims: (i) the trial court erred in consistently allowing evidence of uncharged criminal activity, tending only to show Silva's criminal propensity to commit the charged crimes; and (ii) the prosecutor's closing summation was improper and prejudicial. He narrowed his claims, however, in his application to the Court of Appeals, in which he only sought certification on whether "the Prosecutor's closing summation [was] prejudicial in taking undue advantage of favorable Molineux rulings by depicting Appellant as a 'professional drug dealer' with a propensity to sell drugs?" (SR 308.)

In his habeas petition, Silva seeks to expand his prosecutorial misconduct claim to include "the prosecutor's consistent misconduct during the trial." (Pet. Br. at 19.) But Silva failed to raise this claim to the Court of Appeals. Consequently, his prosecutorial misconduct claim relating to the prosecutor's statements at times other than summation is unexhausted.

**B.      Procedural Bar**

The respondent urges the Court to deem Silva's unexhausted prosecutorial misconduct claim exhausted but procedurally defaulted. Silva's prosecutorial misconduct claims are based on facts that were part of the trial record—specifically, statements made by the prosecutor regarding Silva's character and prior crimes—and should have been raised on direct appeal. Accordingly, these claims could not be brought again in a § 440.10 motion. Because state collateral review is unavailable, the Court should deem these claims exhausted but procedurally defaulted.

Silva can bypass the procedural default only if he has demonstrated "either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" DiSimone, 461 F.3d at 190–91 (quoting Bousley, 523 U.S. at 622). In his habeas petition, Silva does not submit any explanation for his failure to raise the unexhausted claims properly. Nor can he show that a fundamental miscarriage of justice would occur if the Court should deny review of this claim. Silva has not submitted any new evidence to this Court that would support an actual innocence claim, nor does he assert actual innocence in his habeas petition. Therefore, this outlet is unavailable to him.

Because Silva has not (i) shown cause for failing to raise this claim on his direct appeal, or (ii) demonstrated that a failure to consider the claim would result in a "fundamental miscarriage of justice," Coleman, 501 U.S. at 750, he has not overcome the procedural default doctrine and this Court is not compelled to review the defaulted claim on its merits.

**C.      Merits**

The Court should deny Silva's exhausted prosecutorial misconduct claims. Silva contends that the prosecutor's misconduct during summation was "improper and prejudicial and deprived petitioner of his due process and Equal Protection rights to a fair trial." (Pet. Br. at 19.) He complains that the prosecutor: (i) violated Molineux by "constantly" portraying Silva as a

drug dealer, instead of focusing on his alleged actions related to the March 7, 2008 charges; (ii) impermissibly shifted the burden of proof to the defendant by commenting on the defense's failure to offer evidence that contradicted the prosecution's evidence; (iii) made inflammatory remarks about Silva's character; and (iv) inappropriately vouched for the credibility of her own witnesses.

The proper standard of review for a prosecutorial misconduct claim is "the narrow one of due process, and not the broad exercise of supervisory power." Jackson v. Conway, 763 F.3d 115, 146 (2d Cir. 2014) (quoting Darden v. Wainwright, 477 U.S. 168, 180 (1986)). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." United States v. Young, 470 U.S. 1, 11 (1985). Instead, "the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." Id. at 12. "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforno, 416 U.S. 637, 643 (1974)); see also Jackson, 763 F.3d at 146 ("The habeas court must consider the record as a whole . . . because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context.") "When reviewing [prosecutorial misconduct] claims under the 'unreasonable application prong' of § 2254(d)(1), the habeas court must keep in mind that this standard is a 'very general one' that affords courts 'leeway in reaching outcomes in case-by-case determinations.'" Id. (quoting Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012)).

"A prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant

substantial prejudice." United States v. Rivera, 22 F.3d 430, 437 (2d. Cir. 1994). To determine whether a prosecutor's comments caused prejudice, the court considers three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004).

### 1.    Propensity Challenge

Silva argues that "the prosecutor's closing summation was replete with 'propensity' language." (Pet. Br. at 20.) He cites as examples the prosecutor's repeated references to "the business," her assertion that Silva was "the most important person in the business," (T. 954, 956), and her reference to Silva's prior, uncharged sale of cocaine to Rivera in December 2007.

Prior act evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The prosecutor offered evidence of uncharged crimes for the purpose of establishing the elements of the criminal sale of cocaine and criminal possession with intent to sell. Because Silva was never in physical possession of the cocaine he sold to Rivera, the prosecutor presented recorded conversations about the four-kilogram shipment of cocaine to establish that Silva had constructive possession and control over the drugs. This evidence was necessary to satisfy the People's burden of proof and the court found that its probative value outweighed any unfair prejudice.

Evidence of prior misconduct also was admissible to provide the jury with background information on the relationship between Silva and Rivera. It provided the jury with information

on how Silva became a target of the investigation, the methods used by police to obtain cell phone numbers that were the subject of the wiretap orders, and why and how Silva's telephone conversations were intercepted and interpreted by the police.

On cross-examination, defense counsel opened the door to evidence of uncharged crimes by attempting to undermine the credibility of several police officers. When questioning Detective Salvador, defense counsel elicited testimony that after the sale on March 7, 2008, the police had intercepted no conversations referencing a completed sale. On redirect examination, the court appropriately permitted the prosecutor to question Detective Salvador about subsequent conversations between Silva and other customers referring to the completed March 7 sale.

Moreover, any prejudice caused by the presentation of evidence of Silva's prior drug sales was tempered by the trial court's instructions to the jury. The court instructed that the evidence of uncharged crimes was not offered, and should not be considered, to establish propensity to commit the charged crimes, but as background on the relationship between Silva and other individuals in Rivera's organization.

Finally, on summation the prosecutor was permitted to infer from the evidence that Silva was an experienced drug dealer. See Young, 470 U.S. at 9, n.7 ("In closing argument to the jury the lawyer may argue all reasonable inferences from the evidence in the record") (quoting ABA Standards for Criminal Justice 4-7.8). There was ample evidence at trial concerning Silva's participation in prior drug transactions and his involvement in Rivera's organization. Before closing arguments, the court explained that summations provide each lawyer the opportunity to review the evidence and submit to the jury any inferences and conclusions that they contend may be drawn from it. The court also advised the jury that summations are arguments, and not evidence, and that the jurors are the exclusive finders of fact. The court's detailed instructions

before summation ensured that the jury understood the purpose of these arguments and cured any prejudice that may have been caused by the prosecutor's comments about Silva's other bad acts or his "business" as a drug dealer.

### 2.      Burden Shifting Challenge

Silva argues that the prosecutor attempted to shift the burden of proof onto the defendant when she remarked on the defendant's failure to cross examine the police officers and when she pointed out that the defense had not presented any evidence indicating the identity of a "mystery caller" who may have sold the kilogram of cocaine to Rivera.

While it is improper for the prosecutor to shift the burden of proof to the defendant, see United States v. Cruz, 797 F.2d 90, 93 n.1 (2d Cir. 1986), the few remarks made by the prosecutor did not substantially prejudice Silva. The facts here are similar to those in United States v. Millar where the prosecutor asked at summation "What evidence did [the defense] offer you?" to support their theory of the case. 79 F.3d 338, 344 (2d Cir. 1996). The Court of Appeals held that the comment was of passing significance and any prejudice was instantly cured by the district court's instructions to the jury. Id. Similarly, here, the prosecution's remarks were of little significance and did not cause substantial prejudice to Silva. Although the trial judge overruled defense counsel's objections to these remarks, in the jury instructions given shortly after closing arguments, the court issued explicit directions that the prosecution bears the burden of proof and that "the defendant is not required to prove or disprove anything." (T. 976–77.)

### 3.      Inflammatory Remarks

Silva asserts that the prosecution made inflammatory remarks that were "designed to appeal to the jury's emotions or to 'inflame passions and prejudices of the jury.'" (Pet. Br. at 25.) Silva claims that the prosecutor inappropriately "belittled" the defense by referring to defense

counsel's arguments to the jury as "distractions" and "smoke screens." (Pet. Br. at 26; T. 936, 954.) The prosecutor also remarked on the presence of Silva's children in the house while he was wrapping up drugs in the bathroom and stated that by sending Hermania to act his courier, Silva showed that he "doesn't care" about his elderly cousin. (T. 967.)

In assessing a denigration charge, "the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." Young, 470 U.S. at 12. Some of the prosecution's remarks were appropriate as a direct response to the defense's own use of these terms in reference to the prosecution's case. Additionally, none of the prosecutor's comments rose to such a level as to undermine the fairness of the proceedings. See Millar, 79 F.3d at 344 (prosecutor's comments that defendant's theory of the case was "hogwash" and that defense counsel had created a "smoke screen" were only "mildly inappropriate, if that, and clearly do not rise to the level of severity sufficient to require reversal").

The prosecutor's more personal attacks on the defendant's character were inappropriate. But they do not require reversal. Under the Darden standard, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned. . . . The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. In response to defense counsel's objections to the statements about Silva's children, the court reminded the jury that it was their recollection, and not the prosecutor's closing argument, that controlled. The jury had already heard the tape of the defendant discussing a drug deal while his children were present in the background. Although the prosecutor's comments on Silva's lack of parenting skills were certainly "undesirable," they did not cause such substantial prejudice as to require a reversal of

the conviction. See Olsen v. McFaul, 843 F.2d 918, 930 (6th Cir. 1988) (prosecutor's "gratuitous insults" of the defendant as "old and feeble," and as a "deadbeat," "creep" and "liar" did not deprive the defendant of a fair trial); Lindsey v. Smith, 820 F.2d 1137, 1155 (11th Cir. 1987) (prosecutor's calling defendant a "scum" during closing argument was a "breach of propriety," but did not constitute a denial of due process).

### 4.    Bolstering

As a general rule, "[a]ttorney statements vouching for the credibility of witnesses are generally improper because they 'imply the existence of extraneous proof." United States v. Perez, 144 F.3d 204, 210 (2d Cir. 1998) (citations omitted). When the defense has attacked the credibility of the prosecution's witnesses, however, the prosecutor has "greater leeway in commenting on the credibility of their witnesses." Id. Here, the prosecutor's comments that the "officers were honest about what they saw" were "not an attempt to vouch for or bolster their credibility as law enforcement officers but a rebuttal to the [defense's] argument that they fabricated their testimony." United States v. Barlow, 479 F. App'x. 372, 374 (2d Cir. 2012). The prosecutor's comments were therefore appropriate under the circumstances.

Although some of the prosecutor's comments on summation constituted inappropriate attacks on Silva's character, in the context of the entire summation, they did not cause Silva substantial prejudice. Additionally, the judge issued curative instructions to ensure that the jury did not consider evidence of Silva's prior bad acts as proof of his propensity to commit the charged crimes. Finally, in light of the overwhelming evidence presented at trial of Silva's participation in the March 7, 2008 drug sale, any prejudicial comments likely had no meaningful effect on the jury's evaluation of the prosecution's case.

**CONCLUSION**

Because Silva's claims do not warrant habeas relief, I recommend DENYING his § 2254 petition. I further recommend that the Court decline to issue a certificate of appealability because Silva has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    New York, New York
          August 30, 2016

cc:        Julian Silva (*by Chambers*)
          11-A-0078
          Sing Sing Correctional Facility
          354 Hunter Street
          Ossining, NY 10562

\*         \*         \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ .P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2) (C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the Daniel Patrick Moynihan United States

Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for

filing objections must be addressed to Judge Woods. The failure to file these timely objections

will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).